**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHIMERA JONES, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>  v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO., LTD. (d/b/a Samsung Electronics America, Inc.),<br><br>         Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Jones ("Plaintiff"), on behalf of herself and all others similarly situated, brings this Class Action Complaint against Defendants Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd., (collectively, "Samsung") based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

### I. INTRODUCTION

1. Plaintiff brings this Class Action Complaint on behalf of customers harmed as a result of Samsung's surreptitious collection, use, storage, and disclosure of Plaintiff's and Class members highly sensitive biometric data.

2. Samsung is the designer, manufacturer, and vendor of Samsung smartphones, tablets, and apps. Samsung has nearly a 30% market share of the smartphone market in the United States, and a 17.6% market share of the tablet market.

3. Samsung's most popular devices include the Samsung Galaxy smartphones and the Galaxy Tab tablet. The Samsung Galaxy product line includes the Galaxy S, Galaxy Note,

Galaxy Z, Galaxy A (Alpha), and Galaxy M (Millennial) series. Since 2009, Samsung has sold over two billion Samsung Galaxy smartphone devices and more than 50 million Galaxy Tab devices within the last two years (collectively "Samsung Devices").

4.      All Samsung Devices are manufactured and sold with the Gallery application ("Gallery App") pre-installed as the default photograph and video application. The Gallery App allows Samsung Device users to save, organize, edit, share, and store their photographs in one location. Everything the user captures from their camera is automatically saved to the Gallery App.

5.      Unbeknownst to users, Samsung uses facial recognition technology on each photograph or video captured by the user. Specifically, Samsung automatically scans and analyzes the image and/or video frame and assigns a tag based on the object(s), face, and/or individual(s) identified.

6.      Once a face is detected, Samsung's algorithms analyze and extract distinct facial features, such as the distance between the eyes, chin shape, location of the mouth, ears, and eyebrows, to create a unique digital representation of each face. Samsung's own Staff Engineer confirmed this process occurs "using what is known as a 'convolution neural network' or 'CNN,' [to] analyze[] multiple facial landmarks."[1]

7.      Samsung uses this information to create a "face template" based on these unique attributes. This face template is then compared to pre-existing templates stored in Samsung's database to identify a match.

8.      Each face template Samsung creates is extracted from the user's photo library and stored in a facial recognition database or facial database on, at least, the users' Samsung Device in the solid-state memory.

---

[1] *Wallrich et al v. Samsung Electronics America, Inc.*, et al, No. 1:22-cv-05506, Pet. to Compel Arbitration, Ex. H, ECF. No. 1 (N.D. Ill.) ("Samsung Declaration").

9. This entire process is automated without the user's involvement or consent whenever a new photograph or video is stored on a Samsung Device.

10. Users cannot disable this facial recognition technology, nor can they prevent Samsung from harvesting the biometric identifiers from the photographs and videos stored on their Samsung Devices.

11. Worse, instead of disclosing its practice of collecting biometric identifiers in the form of faceprints and face scans, Samsung intentionally deceives users into believing that Samsung applies non-facial recognition processes by disclosing what it calls an "image analysis," while failing to notify users that this system cannot function without repeatedly scanning their facial geometry and generating face scans.

12. Neither Samsung's Privacy Policy nor the Gallery App contain any type of disclosure to notify Illinois users that Samsung is generating, collecting, using, and storing their biometric information and biometric identifiers.

13. Samsung does not disclose its biometric data collection to its users, nor does it ask users to acknowledge, let alone consent to, these practices.

14. Through these practices, Samsung not only disregards the users' privacy rights; it also violates the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), which was specifically designed to protect Illinois residents from practices like Samsung's. In particular, Samsung violated (and continues to violate) BIPA because it does not:

- Properly inform Plaintiff or the Class in writing that their biometric identifiers (faceprints and face scans) were being generated, collected, or stored;

- Properly inform Plaintiff or the Class in writing of the specific purpose and length of time for which their biometric identifiers were being collected, stored, and used;

- Receive a written release from Plaintiff or the Class to collect, capture, or otherwise obtain their biometric identifiers.

3

15.     Accordingly, this Complaint seeks an order (i) declaring that Samsung's conduct violates BIPA; (ii) requiring Samsung to cease the unlawful activities discussed herein; and (iii) awarding statutory damages to Plaintiff and the proposed Class.

## II.   PARTIES

11.     **Plaintiff Shimera Jones** is a natural person and a citizen of Cook County, Illinois.

12.     Plaintiff Jones has owned a Samsung Galaxy device since at least 2018. Plaintiff Jones has used her Samsung Galaxy device to take photographs of herself, including photographs of Plaintiff's face and other physical attributes while residing in the State of Illinois, and saved those photographs on her Samsung Device and the Gallery App.

13.     Each time Plaintiff Jones took a photograph of herself and saved those photographs to the Gallery App, Samsung collected, captured, received through trade, or otherwise obtained and disclosed Plaintiff's biometric identifiers, including face scans and faceprints, and biometric information such as Plaintiff's facial geometry.

14.     Plaintiff believed that her biometric data would not be collected, used, or analyzed. Plaintiff did not consent or provide permission for Samsung to collect, use, store, or disclose her biometric data.

15.     Samsung did not obtain written releases from Plaintiff before capturing, collecting, receiving through trade, or otherwise obtaining her biometric identifiers or biometric information in compliance with 740 ILCS 14/15(b)(3).

16.     Plaintiff's face scans and faceprints are "biometric identifiers" pursuant to 740 ILCS 14/10.

17.     Any other data in Samsung's possession that links Plaintiff's face scans and faceprints to Plaintiff also constitutes "biometric information" pursuant to 740 ILCS 14/10.

18.     As set forth herein, Samsung obtained the biometric identifiers and/or biometric information of Plaintiff and the Class in violation of BIPA.

19.     **Defendant Samsung Electronics America, Inc**. is a New York corporation with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey.

20.     Samsung Electronics America, Inc., is a wholly owned subsidiary of Samsung Electronics Co., Ltd. Samsung Electronics America, Inc. is responsible for the sale of Samsung devices in the United States.

21.     **Defendant Samsung Electronics Co., Ltd**. (f/k/a Samsung Electronic Industries), is a South Korean multinational corporation headquartered in the Yeongtong District of Suwan, was incorporated under the laws of the Republic of Korea in 1969 and lists its shares on the Korea Stock Exchange in 1975. Samsung Electronics Co., Ltd. is the parent company to Samsung Electronics America, Inc.

22.     Samsung Electronics Co., Ltd. is responsible for manufacturing Samsung Devices, including mobile phones.

23.     Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. conduct significant business throughout the State of Illinois and the United States, including through the manufacturing, sale, and shipment of Samsung Devices.

24.     Samsung has a 30% market share of smartphone sales in the United States as of the second quarter of 2022. It also has a 17.6% market share in the tablet market.

25.     In the first quarter of 2022, Samsung controlled 24% of smartphone shipments into the United States, accounting for approximately 10.5 million smartphone shipments.

26.     As of December 31, 2021, Samsung earned more net revenue from America than any other region in the world, bringing in a total net revenue of approximately $68 billion. By

comparison, Samsung brought in only $35 billion from Europe and even less from anywhere else, including Korea, Asia, Africa, and China.

27.     In addition to device manufacturing and sales, Samsung operates "Samsung Research" which it refers to as an "advanced R&D hub" of Samsung Electronics with a focus on creating technologies for Samsung's products and services. Samsung Research focuses particularly on artificial intelligence and data intelligence, including using advanced data analytics to turn data into intelligent knowledge that will enable the ability to make inferences. Samsung Research has at least one location in the United States.

28.     A subset of Samsung Research is the Samsung Research AI Center ("SAIC"), which was established in November 2017. SAIC consolidates Samsung's AI-related research terms with the company's R&D Center. SAIC operates two AI Centers in the United States. The Head of Samsung's AI Center is Daniel D. Lee, who is based in the United States.

29.     Upon information and belief, SAIC and Samsung Research are both responsible for the development of Samsung's facial recognition technology and algorithms.

## II.     JURISDICTION AND VENUE

30.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative members of the Classes defined below, and a significant portion of putative Class members are citizens of a state different from at least one Defendant.

31.     This Court has personal jurisdiction over Defendants because each of them regularly conducts business in Illinois and a substantial part of the harm, events, and conduct giving rise to Plaintiff's claims occurred in Illinois.

32.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c), and (d) because Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. transact business in this District and a substantial portion of the events giving rise to the claims occurred in this District.

## III.     BIOMETRIC DATA & BIOMETRIC IDENTIFIERS

11.      The proliferation of behavioral economics and marketing science have caused a significant expansion in the use of biometric data.

12.     Biometric data are unique physical characteristics such as retina or iris scans, fingerprints, voiceprints, or hand and face geometry scans as well as the information based on or derived from it.

13.     One of the most prevalent uses of biometrics is facial recognition technology, which works by scanning an image for human faces and recording, extracting facial feature data from a photograph or image of a human face, generating a "faceprint" from the image through the use of facial-recognition algorithms, and then comparing or "matching" the resultant faceprint to other faceprints stored in a "faceprint database."

14.     Biometric data are one of the most sensitive forms of personal information because biometric data cannot be changed once the data is stolen or compromised. Once a person's unique and permanent biometric identifiers are exposed, the victim is left with no recourse to prevent identity theft and/or unauthorized tracking.

15.     Accordingly, the use of biometric data raises a host of privacy concerns and risks associated with misuse or theft. The largest-ever-conducted study on the subject matter by the

University of Texas titled *Consumer Attitudes About Biometric Authentication*, showed that 86%[2] of consumers were concerned about the misuse of their personal information and fewer than 10%[3] of consumers felt comfortable giving up their biometrics for online shopping, internet games, or accessing online school records.

16.     That same study revealed "invasion of personal privacy" is the chief reason for consumers' discomfort in sharing their biometric data.[4] Similarly, a recent survey of 1,000 individuals published by digital identity firm Entrust titled *State of Consumer Data Privacy Survey*,[5] found 79% of respondents were concerned about their privacy, a fear mainly driven by the risks of attacks and security breaches.

17.     Regulators express the same concerns. Given the clear potential for misuse, the Federal Trade Commission ("FTC") urged companies using facial recognition technology and collecting biometric data to ask for clear consent before scanning and extracting biometric data from their digital photographs.

18.     Despite these efforts, there has been a significant exploitation of biometric data. For example, for eight years, RiteAid deployed facial recognition systems in largely lower-income, non-white neighborhoods, allegedly to target these demographics specifically.[6] Such continued abuses of facial recognition technology and biometric data that harm the public welfare led to the

---

[2] RACHEL L. GERMAN, ET AL., *Consumer Attitudes About Biometric Authentication* 24 (Univ. of Tex. At Austin Ctr. For Identity May 2018), https://identity.utexas.edu/sites/default/files/2020-09/Consumer%20Attitudes%20About%20Biometrics.pdf.

[3] *Id.* at 14.
[4] *Id.* at 15.
[5] Alessandro Mascellino, *Consumers' Contrasting Opinions Towards Biometric Adoption Shown by Entrust Report*, BIOMETRIC UPDATE (Feb. 1, 2021), https://www.biometricupdate.com/202102/consumers-contrasting-opinions-towards-biometric-adoption-shown-by-entrust-report.
[6] Jeffrey Dastin, *Rite Aid Deployed Facial Recognition Systems in Hundreds of U.S. Stores*, Reuters (July 28, 2020, 11 A.M. GMT) (https://www.reuters.com/investigates/special-report/usa-riteaid-software/.

enactment of the Illinois Biometric Information Privacy Act.

## IV.    THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

19.    BIPA was enacted in 2008. Under BIPA, companies may not collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

20.    The statute defines "biometric identifier" to include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

21.    The statute defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

22.    BIPA also regulates how companies must handle Illinois consumers' biometric data. *See, e.g.*, 740 ILCS 14/15(c)–(d). For instance, under BIPA no private entity in possession of biometric identifiers or information may disclose or disseminate this data unless it receives the subject's consent. 740 ILCS 14/15(d). BIPA prohibits selling, leasing, trading, or otherwise profiting from a person's biometric data, 740 ILCS 14/15(c), and requires that companies develop a publicly available written policy establishing a retention schedule and guidelines for

permanently destroying biometric data when the initial purpose for collecting such data has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. It also requires companies to comply with the established retention schedule and destruction guidelines.  740 ILCS 14/15(a).

23.      Under BIPA, "[a] prevailing party may recover for each violation: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and (4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id*. (emphasis added).

## V.      SAMSUNG VIOLATES THE PRIVACY OF ILLINOIS RESIDENTS

24.      Samsung Devices are manufactured and sold with the Gallery App pre-installed as the default photograph and video viewing application. Using the Gallery App, Samsung users can create personal and shared albums, "stories,"[7] and movies, and employ Samsung's editing and "tagging" features.[8]

25.      According to Samsung, the Gallery App allows Samsung Device users to save, organize, edit, share, and store their photographs in one location:

The Gallery app is the perfect place to organize all of your videos and photos.

---

[7] *How do I use the Gallery app on my Galaxy device?* Samsung, https://www.samsung.com/uk/support/mobile-devices/how-do-i-use-the-gallery-app/ (last viewed October 14, 2022) ("Stories give you everything you need to enhance your images and create something even more shareable. You can use stories in a similar way to albums, helping you to organize your image and videos but you can also use stories to turn your images into collages and GIFs."); *see also, id.* at "Gallery Settings" (allowing users to "create stories automatically based on the faces, time, and locations of pictures and videos").

[8] *Id.* (According to Samsung, its editing tools include "a huge range of options including filters, stickers, doodles and colour spot").

Everything you capture from the camera on your phone will automatically be saved to the gallery, but you can also add in or download photos so that you can store all of your memories in the same place. If you want greater control over how your images and videos look, the Gallery has a full suite of editing options from filters and stickers to colour tools and background music.

The Gallery app can connect to the Samsung Cloud, making it really easy to share your unforgettable moments across all of your devices. You can also create shared albums so that all of your loved ones can follow along with your adventures, no matter where you are in the world.[9]

26.     Each time a user takes a photograph or video, Samsung deploys its proprietary facial processing systems and recognition technology.

27.     Specifically, Samsung automatically scans and analyzes the image or video frame, assigns a tag based on the object, faces, or individuals identifies, and saves it to the Gallery App.

28.     Once a face is detected, Samsung's algorithm identifies and extracts the users' facial features, such as the mouth, chin, nose, ears, eyes, and eyebrows, and the spacing between those features, to calculate a unique digital representation of each face.[10] Based on this information, Samsung creates a "face template" and then compares it to other templates stored in its database to identify a match.[11]

29.     Samsung uses this information to create a face template based on the identified geometric attributes such as distance between the eyes and the width of the nose. Samsung

---

[9] *How do I use the Gallery app on my Galaxy device?* Samsung, https://www.samsung.com/uk/support/mobile-devices/how-do-i-use-the-gallery-app/ (last viewed October 14, 2022).

[10] *See* Patent No.: US 11,222,196 B2: Simultaneous Recognition of Facial Attributes and Identity in Organizing Photo Albums (Jan. 11, 2022) (describing how Samsung applies facial processing technology to recognize facial landmark features to identify and organize photograph and video albums based on modifying an efficient convolutional neural network (CNN) which extracts facial representations suitable for face identification and attribute (age, gender, ethnicity, emotion, etc.)).

[11] *See* Patent No.: US 10,666,869 B2: Image Display Apparatus and Image Display Method (May 26, 2020) ("*[w]henever the image is captured, the control unit 150 may performed the face recognition on the captured image*. The control unit 150 may recognize the subject included in the captured image by comparing a face of the subject included in the captured image with a database. For example, the control unit 150 may recognize the subject included in the captured image within persons included in a contact list.").

compares the newly created face template to the face templates stored in Samsung's database to identify a match, which may include individuals within the person's contact list.[12]

30.     If there is a match, the Gallery App "tags" the image and groups it with previously stored images depicting the same individual. Images of the same individual are "stacked" together, with the front of the stack displaying the identified individual's face within a circular frame.

31.     Samsung's own Staff Engineer confirmed Samsung's use of facial recognition technology and collection of biometric identifiers and information.[13] According to Samsung's Staff Engineer, Samsung analyzing each photograph taken by a user for "face clustering," determines whether a face is detected in the image, analyzes each face for "landmarks" to "align" the facial image, extracts those key facial features, and converts said data into "vectors," each of which is assigned a numerical value corresponding to a specific facial feature.[14] Once the vectors have been assigned, a Clustering Engine analyzes the vectors to determine if the similarity values between the analyzed image and other images stored locally on the device are high enough to "cluster."[15]

32.     By analyzing the face for landmarks, extracting key facial features, and converting that data into vectors, which are then assigned numerical values, Samsung is generating a mathematical representation of the user's face. The numerical values that correspond to user's specific facial features is biometric information.

---

[12] *See* Patent No. US 10,666,869 B2: Image Display Apparatus and Image Display Method (May 26, 2020) ("The image display method may further include recognizing subjects included in the captured one or more images through face recognition, displaying tags corresponding to the recognized subjects and a share button on the camera preview screen, and sharing the captured one or more images in response to a touch input on the photo reel, at least one of the thumbnails, at least one of the tags, or the share button."); Patent No. US 10,129,481 B2: Image Display Apparatus and Image Display Method (Nov. 13, 2018) (same).
[13] *See* Samsung Declaration.
[14] Samsung Declaration, ¶¶ 2, 8, and 11.
[15] *Id.* ¶ 12.

33. Samsung's patents confirm the same. For instance, Samsung's Patent No.: US 10,666,869 B2: Image Display Apparatus and Image Display Method, issued on May 26, 2020, and Patent No.: US 10,129,481 B2: Image Display Apparatus and Image Display Method, issued on November 13, 2015 both confirm that "the subject included in the captured image may be recognized through face recognition" and that the "subject included in the captured image" may then be "compar[ed]" to an "image" in "a database." Samsung's Patent No.: US 11,222,196 B2: Simultaneous Recognition of Facial Attributes and Identity in Organizing Photo Albums (Jan. 11, 2022), also describes its use of facial recognition technology and explains how the technology identifies "facial identity features." Samsung's Gallery App functions in conformity with these patents.

34. Significantly, neither Samsung's Privacy Policy nor the Gallery App contain any type of disclosure to notify Illinois users that Samsung is generating, collecting, using, and storing their biometric information and biometric identifiers.

35. In fact, Samsung purposefully misleads users into thinking that the Gallery App applies non-facial recognition processes by disclosing its use of what it calls "image analysis," while failing to notify users that this system cannot function without repeatedly scanning their facial geometry and generating face scans.

36. Samsung provides no mechanism by which anyone may opt out of this process. Samsung Device users cannot disable the feature nor consent to its use because the Gallery App applies facial scanning and face recognition techniques automatically to all photographs and videos. Because there is no way to disable this feature, the use of Samsung Devices to take or store photographs is *conditioned* on the collection of biometric information.

37. Samsung's practice of collecting and storing faceprints violates the Illinois BIPA

740 ILCS 14/*et seq*., which prohibits the collection, retention, capture, or purchase of biometric identifiers or biometric information without a written release from the individual. BIPA also requires a private entity in possession of biometric identifiers or biometric information to develop a retention schedule and guidelines setting forth the purpose for collecting biometric information and identifying a date upon which the biometric data will be destroyed. 740 ILCS 14/15(a).

38.     Samsung violates BIPA multiple ways including, but not limited to:

a.     Samsung generates, collects, stores, and utilizes faceprints and face scans of its users without receiving executed written releases from the users of Samsung Devices.

b.     Samsung does not have a written policy available on its website "establishing a retention schedule and guidelines for permanently destroying biometric data when the initial purpose for collecting such data has been satisfied, or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

39.     Under BIPA, no private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or customer's biometric identifier or biometric information, unless it first:

(1)     informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2)     informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; ***and***

(3)     receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740CS 14/15(b) (emphasis added).

40.     BIPA claims brought under sections 740 ILCS 14/15 (a), (b), and (e) are subject to a five-year statute of limitations period, thus, Plaintiff's claims are not time-barred.

14

## VI.     CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following Class of Persons:

> **Class:** All US citizens who live in Illinois and who, from the date five years prior to the date of the filing of this action to the date of the Class's certification of this action, (1) owned a Samsung Galaxy device, and (2) captured images of themselves, depicting their facial features, with the Samsung Galaxy device.

42.     Excluded from the Class are: (1) Defendants, Defendants' subsidiaries, parents, successors, predecessors, agents, employees, attorneys, insurers, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (2) any Judge or Magistrate presiding over this action and any immediate family members; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) Plaintiff's counsel and Defendants' counsel; and (5) any individuals that have noticed private arbitrations against Samsung relating to the claims asserted in this Action.[16]

43.     Defendants' conduct violated the statutory privacy rights of thousands, if not millions, of Class members, including Plaintiff, without consent.

44.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a Class action will provide substantial benefits to the parties and the Court.

45.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a.     Whether Samsung collected, captured, received, or otherwise obtained Plaintiff's and the Class's biometric identifiers;

---

[16] *See, e.g.*, Christopher Brown, *Samsung Facing Almost 50,000 Arbitration Claims Over Selfies*, Bloomberg Law (Oct. 11, 2022, 3:21 PM) https://news.bloomberglaw.com/tech-and-telecom-law/samsung-facing-almost-50-000-arbitration-claims-over-selfies.

b.  Whether Samsung properly informed Plaintiff and the Class that it collected, used, and stored their biometric identifiers;

c.  Whether Samsung obtained a written release (as defined in 740 ILCS 14/10) from Plaintiff and the Class to collect, capture, or otherwise obtain their biometric identifiers;

d.  Whether Samsung has sold, leased, traded, or otherwise profited from Plaintiff's and the Class members' biometric identifiers;

e.  Whether Samsung had and made available to the public, a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers in compliance with the BIPA; and

f.  Whether Samsung's violations of BIPA were committed intentionally, recklessly, or negligently.

46.  Plaintiff's claims are typical of those of the Class because Plaintiff and the Class were harmed by Defendants' wrongful conduct in violation of the applicable state statutes. Plaintiff's and the Class members' privacy were invaded by Defendants' uniform wrongful conduct.

47.  Plaintiff will adequately protect the Class's interests. Plaintiff has retained counsel competent and experienced in complex litigation and Class actions, including litigations to remedy privacy violations. Plaintiff has no interest that is antagonistic to the interests of the Class, and Defendants have no defenses unique to any Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the interests of the other members of the Class.

48.  A Class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### III.    TOLLING, CONCEALMENT, AND ESTOPPEL

49.     The applicable statutes of limitation have been tolled as a result of Samsung's knowing and active concealment and denial of the facts alleged herein, namely its practice of analyzing Plaintiff's and Class members' images and videos depicting facial features and creating faceprints and face scans without their consent and written release.

50.     Plaintiff and Class members could not, with due diligence, have discovered the full scope of Samsung's conduct, due in no small part to Samsung's efforts to conceal such conduct. All applicable statutes of limitation also have been tolled by operation of the discovery rule. Under the circumstances, Samsung was under a duty to disclose the nature and significance of their practice of analyzing the facial features depicted in photographs and videos captured on Samsung Devices to create faceprints and face scans but did not do so. Defendants are therefore estopped from relying on any statute of limitations.

51.     Samsung's fraudulent concealment and omissions are common to Plaintiffs and all Class members.

52.     Illinois' BIPA provides a private right of action such that any "person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in a federal district court against an offending party." 740 ILCS 14/20.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
Violation of 740 ILCS 14/15(b)
(On Behalf of Plaintiff and the Class)

53.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54.     The Illinois Legislature instituted BIPA on a finding that the "full ramifications of

biometric technology are not fully known" and that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5.

55.     BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive, receive through trade, or otherwise obtain a person's or a customer's biometric identifier . . . unless it first: (1) informs the subject . . . in writing that a biometric identifier . . . is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier[.]" 740 ILCS 14/15(b) (emphasis added).

56.     Defendants are corporations and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

57.     Plaintiff and Class members' faceprints and face scans are "biometric identifiers" pursuant to 740 ILCS 14/10.

58.     Samsung systematically and automatically collected, used, and stored Plaintiff's and Class member's biometric identifiers without first obtaining the specific written release required by 740 ILCS 14/15(b)(3).

59.     Samsung did not properly inform Plaintiff or Class members in writing that their biometric identifiers or biometric information were being collected and stored, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

60.     By collecting, storing, and using Plaintiff's and Class members' biometric

identifiers or biometric information as described herein, Samsung violated Plaintiff's and the Class members' rights to privacy in their biometric identifiers as set forth in BIPA. 740 ILCS 14/1, *et seq*.

61.     On behalf of herself and the Class, Plaintiff seeks: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Samsung to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers or biometric information; (ii) statutory damages of $5,000.00 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2); (iii) statutory damages of $1,000.00 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iv) reasonable attorney's fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CLAIM FOR RELIEF**
**Violation of 740 ILCS 14/15(a)**
**(On Behalf of Plaintiff and the Class)**

62.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

63.     Section 15(a) of BIPA requires that any "private entity in possession of biometric identifiers . . . must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers . . . when the initial purpose for collecting or obtaining such identifiers . . . has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

64.     Samsung does not publicly provide a retention schedule or guidelines for permanently destroying their biometric identifiers or biometric information as specified by BIPA. *See* 740 ICLS 14/15(a).

65.     Samsung did not adequately disclose to Plaintiff and Class members that it would analyze the photographs and videos captured on their Samsung Devices using facial recognition

technology, collecting their biometric information in the form of faceprints and face scans.

66. Accordingly, on behalf of herself and the Class, Plaintiff seeks: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Samsung to establish and make publicly available a policy for the permanent destruction of biometric identifiers complaint with 740 ILCS 14/15(a); (ii) statutory damages of $5,000.00 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2); (iii) statutory damages of $1,000.00 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iv) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class, respectfully request that the Court enter an order:

A. Certifying this case as a Class action on behalf of the Class defined above, appointing Plaintiff as representatives of the Class, and appointing Plaintiff's counsel as the Class counsel;

B. Declaring that Samsung's conduct, as set out above, violates the state statutes cited herein;

C. Ordering Samsung to delete all biometric identifiers and biometric information of Class members, and to implement procedures to require consent before collecting, analyzing, storing, or using this information;

D. Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and the Class pre-and post-judgment interest, to the extent allowable;

G. Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

H. Awarding such other and further relief as the Court deems reasonable and just.

Dated: October 14, 2022

*/s/ Michael D. Smith*
Michael D. Smith
Law Office of Michael D. Smith, P.C.
231 South LaSalle Street
Suite 2100
Chicago, IL 60604
(312) 546-6140
msmith@smithlawchicago.com

*/s/ Christian Levis*
Christian Levis (*pro hac vice forthcoming*)
Amanda Fiorilla (*pro hac vice forthcoming*)
Rachel Kesten (*pro hac vice forthcoming*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:     (914) 997-0500
Facsimile:     (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Attorneys for Plaintiff and the Proposed Class*